**Case No. 22-50673**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Angela Robinson, Individually; Clara Busby, as next friend, guardian, and parent of and for minors L.H. and T.H.; Rachel Ambler, as independent Administrator of, and on behalf of, Angela Robinson, minors L.H. and T.H., the Estate of Savion Vashon Hall, and Savion Vashon Hall's heirs at law,

*Plaintiffs - Appellants*

v.

Midland County, Texas; Daniel Stickel,
Defendants – Appellees

On Appeal from
United States District Court for the Western District of Texas
7:21-CV-111

### APPELLEES' RESPONSE BRIEF

R. Layne Rouse
Miles Nelson
Shafer, Davis, O'Leary & Stoker, PC
700 North Grant Street
201 Bank of America Building
Odessa, Texas 79760-1552
Tel: (432) 332-0893 Main
Fax: (432) 333-5002
Email: lrouse@shaferfirm.com
Email: mnelson@shaferfirm.com

**Counsel for Defendants - Appellees**

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Plaintiffs-Appellants:** | **Counsel for Plaintiffs-Appellants:** |
|---|---|
| Angela Robinson, Individually; Clara Busby, as next friend, guardian, and parent of and for minors L.H. and T.H.; Rachel Ambler, as independent Administrator of, and on behalf of, Angela Robinson, minors L.H. and T.H., the Estate of Savion Vashon Hall, and Savion Vashon Hall's heirs at law. | T. Dean Malone Michael T. O'Connor Kristen Leigh Homyk Brandie A. Moser Jordan A. Shannon of Law Offices of Dean Malone, P.C., Dallas, TX |
| | Bruce K. Thomas of Law Office of Bruce K. Thomas, Dallas, TX |
| | George (Tex) Quesada Sommerman McCafity Quesada & Geisler Dallas, TX |
| | Richard L. Hardy Fadduol Cluff Hardy & Conaway, P.C. Lubbock, TX |
| **Defendants – Appellees:** | **Counsel for Defendants-Appellees:** |
| Midland County, Texas; Daniel Stickel. | Miles Nelson and R. Layne Rouse of Shafer, Davis, O'Leary & Stoker, P.C., Odessa, TX |

i

**Insurers For Defendants-Appellees**    Travelers

| **Other Interested Party (Settling Medical Provider):** | **Counsel for Other Interested Party (Medical Provider):** |
|---|---|
| Soluta, Inc.; | Christopher G. Rigler of Thompson, Coe, Cousins & Irons, L.L.P., Dallas, Texas |
| | Zandra E. Foley and Cory S. Reed of Thompson, Coe, Cousins & Irons, L.L.P., Houston, Texas |

| **Other Interested Parties (Settling Medical Provider Nurses):** | **Counsel for Other Interested Parties (Settling Medical Provider Nurses):** |
|---|---|
| Adeola C. Adesomi | Christopher G. Rigler of Thompson, Coe, Cousins & Irons, L.L.P., Dallas, Texas |
| | Zandra E. Foley of Thompson, Coe, Cousins & Irons, L.L.P., Houston, TX |
| Flor Estrada | Ronald A. Ortman of Ortman Law Firm, PLLC, San Antonio, Texas |
| Timothy Gene Forbush, Jr. | Carl David Adams, Dallas, TX |
| Esther Ebele Ihediwa | Wesson H. Tribble and Monica C. Vaughan of Tribble | Ross, Houston, Texas |
| Lilian Kerubo Okeri | Jonathan C. LaMendola of Cobb Martinez Woodward PLLC, |

Dallas, Texas

Kelly V. Robins

Denis Dennis and Darrell W. Corzine
of Kelly, Morgan, Dennis, Corzine &
Hansen,
Odessa, Texas

/s/ R. Layne Rouse
R. Layne Rouse
Attorney of record for Appellees

## STATEMENT REGARDING ORAL ARGUMENT

Because this appeal involves the application of well-established principles of constitutional law, oral argument is unnecessary to aid this Court's decisional process.

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................i

Statement Regarding Oral Argument ...................................iv

Table of Authorities ....................................... viii

Issues Presented ...............................................3

Statement of the Case............................................3

    I.    This Dispute Concerns the Healthcare Soluta Nurses Provided to Inmate Savion Hall...............................................3

        1.  Hall's condition deteriorated despite the medical care provided.....4

        2.  Soluta Nurses were not accurately recording Hall's condition........5

        3.  Officer Stickel did not interact with Hall until July 11, 2019..........6

        4.  Soluta Dr. Willingham did not immediately call EMS...................9

        5.  Hall's condition was beyond saving by July 11, 2019....................9

    II.   The District Court Dismisses Appellants' Claims Against Midland County and Stickel ..............................................10

Summary of the Argument.......................................11

Standard of Review..............................................13

Argument..........................................................15

    Issue I:  Did the district court correctly find that Midland County is not responsible for the Soluta Nurses' alleged actions?................15

        1.  Appellants' burden was to demonstrate how the County caused the claimed harm ..........................................16

2.  Appellants fail to allege any County action caused the Soluta Nurses' actions ................................................................18

3.  The district court correctly rejected County liability based on delegation ....................................................................20

   a.  Liability based on delegation requires County action that Appellants failed to show..........................................21

   b.  Appellants failed to show how the contract for medical services made Soluta a final policymaker................................24

4.  The district court correctly rejected Appellants' single incident exception and ratification theories ................................25

5.  Hall's release from custody on July 11, 2019, did not demonstrate ill motive by the County ...........................................28

6.  The alleged Midland County policies were not the moving force of any violation..............................................................30

7.  Midland County is not liable based on a condition of confinement theory..........................................................33

Issue II: Did the district court correctly conclude that Stickel was not deliberately indifferent to Hall's medical needs and did not cause the alleged harm?................................................................34

1.  Appellants have to show that Stickel acted with deliberate indifference in delaying care and the delay caused Hall substantial harm..............................................................34

2.  Stickel could not have caused substantial harm because Hall was beyond medical saving as of July 11, 2019 ...........................36

3.  Stickel did not ignore, intentionally mistreat, or evidence wanton disregard for Hall's condition ........................................40

4.  Stickel's reliance on medical advice disproves deliberate indifference....................................................................43

5.  An alleged failure to seek additional medical care fails to state a claim for relief ...................................................................47

6.  Qualified immunity bars Appellants' claims .................................49

Conclusion ...........................................................................................................52

Certificate of Service ..........................................................................................54

Certificate of Compliance ...................................................................................55

# TABLE OF AUTHORITIES

**Cases**                                                 **Page(s)**

*Ackerson v. Bean Dredging LLC*
589 F.3d 196 (5th Cir. 2009) ............................................................13

*Ancata v. Prison Health Servs., Inc.*
769 F.2d 700 (11th Cir. 1985) .........................................................21, 22, 23

*Ashercroft v. Iqbal*
556 U.S. 662 (2009)................................................................14, 15

*Baldwin v. Dorsey*
964 F.3d 320 (5th Cir. 2020) .........................................................52

*Banuelos v. McFarland*
41 F.3d 232 (5th Cir. 1995) .........................................................49

*Bank of Abbeville & Tr. Co. v. Commonwealth Land Title Ins. Co.*
201 Fed. App'x 988 (5th Cir. 2006) .........................................................14, 15

*Barney v. Pulsipher*
143 F.3d 1299 (10th Cir. 1998) ....................................................20

*Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*
976 F.3d 585 (5th Cir. 2020) .........................................................14

*Bd. Of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*
520 U.S. 397 (1997)................................................................17, 18, 35

*Beard v. Bureau of Prisons*
4:11-CV-383-Y, 2013 WL 5951160
(N.D. Tex. Nov. 7, 2013)................................................................44

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)................................................................15

*Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*
    869 F.3d 381 (5th Cir. 2017) ..........................................................14

*Brown v. Bolin*
500 Fed. Appx. 309 (5th Cir. 2012) ..........................................................35

*Brown v. Callahan*
    623 F.3d 249 (5th Cir. 2010) ..................................................50, 51

*City & County of San Francisco, Calif. v. Sheehan*
    575 U.S. 600 (2015)..........................................................41

*City of Canton, Ohio v. Harris*
    489 U.S. 378 (1989)..........................................................16, 17

*Connick v. Thompson*
    563 U.S. 51 (2011)..........................................................16

*Converse v. City of Kemah, Texas*
    961 F.3d 771 (5th Cir. 2020) ..................................................42, 43

*Cope v. Cogdill*
    3 F.4th 198 (5th Cir. 2021) ..........................................................40

*Domino v. TDCJ-ID*
    239 F.3d 752 (5th Cir. 2001) ..........................................................48

*Dyer v. Houston*
    964 F.3d 374 (5th Cir. 2020) ..................................................47, 48

*Easter v. Powell*
    467 F.3d 459 (5th Cir. 2006) ..........................................................36

*Emmons v. Painter*
    MO:20-CV-00185-DC, 2021 WL 2832977
    (W.D. Tex. May 23, 2021) ..........................................................30

*Fairchild v. Coryell County, Texas*
    40 F.4th 359 (5th Cir. 2022) ..........................................................37

*Flores v. Jaramillo*
    389 Fed. Appx. 393 (5th Cir. 2010)................................................36

*Fuentes v. Nueces County, Texas*
    689 Fed. Appx. 775 (5th Cir. 2017)...............................................19

*Gobert v. Caldwell*
    463 F.3d 339 (5th Cir. 2006) ...................................................36, 40

*Gibson v. Blackburn*
    744 F.2d 403 (5th Cir. 1984) ........................................................30

*Graham v. Connor*
    490 U.S. 386 (1989)......................................................................51

*Grandstaff v. City of Borger*
    767 F.2d 161 (5th Cir. 1985) .................................25, 26, 27, 34

*Grant v. Collins*
    3 f.3d 439 (5th Cir. 1993) .............................................................36

*Hale v Metrix Research Corp.*
    963 F.3d 424 (5th Cir. 2020) ........................................................13

*Hare v. City of Corinth*
    74 F.3d 633 (5th Cir. 1996) ..........................................................35

*Higginbotham v. Baxter Intern., Inc.*
    495 F.3d 753 (7th Cir. 2007) ........................................................42

*In Re Longtop Fin. Techs. Ltd. Sec. Litig.*
    939 F. Supp. 2d 360 (S.D.N.Y. 2013) ...........................................42

*Jackson v. Valdez*
    3:18-CV-2935-X-BH, 2020 WL 1728775
    (N.D. Tex. Feb. 27, 2020)..............................................................19

*Jebaco, Inc. v. Harrah's Operating Co.*
    587 F.3d 314 (5th Cir. 2009) ........................................................15

*Johnson v. City of Shelby, Miss*
    135 S.Ct. 346 (2014) ...................................................................................13

*King v. Kilgore*
    98 F.3d 1338 (5th Cir. 1996) ...........................................................49

*King v. Kramer*
    680 F.3d 1013 (7th Cir. 2012) ...........................................21, 22, 24

*Lansdell v. Miller*
    817 Fed. Appx. 27 (5th Cir. 2020)....................................................26

*Lormand v. US Unwired, Inc.*
    565 F.3d 228 (5th Cir. 2009) ............................................................13

*Maldonado v. Keesee*
    12 F.3d 1098 (5th Cir. 1993) ...........................................................52

*McClendon v. City of Columbia*
    305 F.3d 314 (5th Cir. 2002) ............................................................35

*McConney v. City of Houston*
    863 F.2d 1180 (5th Cir. 1989) ........................................................17

*Mendoza v. Lynaugh*
    989 F.2d 191 (5th Cir. 1993) ...........................................................36

*Monell v. New York City Dep't of Soc. Servs.*
    436 U.S. 658 (1978).................................................................16, 34

*Olabisiomotosho v. City of Houston*
    185 F.3d 521 (5th Cir. 1999) ...........................................................48

*Peterson v. City of Fort Worth, Texas*
    588 F.3d 838 (5th Cir. 2009) .......................................17, 18, 19, 20

*Pinchback v. Leon-Gomez*
    6:15-cv-805-RWS-KNM, 2017 WL 5632444
    (E.D. Tex. Mar. 7, 2017) .........................................................43, 44

*Pineda v. City of Houston*
    291 F.3d 325 (5th Cir. 2002) ....................................................19, 20

*Piotrowski v. City of Houston*
    237 F.3d 567 (5th Cir. 2001) ...............................................17, 19

*Ramirez v. Stacks*
    260 Fed. Appx. 658 (5th Cir. 2007)...............................................49

*Rodriguez v. S. Health Partners, Inc.*
    No. 3:20-cv-0045-D, 2020 WL 7056336
    (N.D. Tex. Dec. 2, 2020) ................................. 20, 21, 22, 24, 25, 34

*Rowland v. Sw. Corr., LLC*
    420CV00847ALMCAN, 2021 WL 4206409
    (E.D. Tex. Aug. 17, 2021) ..............................................................32

*Rutland v. Pepper*
    404 F.3d 921 (5th Cir. 2005) ..........................................................50

*Saenz v. City of El Paso*
    637 Fed. Appx. 828 (5th Cir. 2016).........................................20, 26

*Sanchez v. Young County, Tex.*
    866 F.3d 274 (5th Cir. 2017) ......................... 18, 19, 25, 27, 28, 33

*Schrader v. Ruggles*
    20-11257, 2021 WL 2843848
    (5th Cir. July 7, 2021)....................................................................51

*Shorty v. Liddell*
    356 Fed. Appx. 769 (5th Cir. 2009)...............................................49

*Sims v. Griffin*
    35 F.4th 945 (5th Cir. 2022) ..........................................................37

*Smith v. Bank of Am., N.A.*
    615 F. App'x 830 (5th Circ. 2015) .................................................13

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*
    365 F.3d 353 (5th Cir. 2004) ..........................................................30

*Spears v. McCraw*
    20-50406, 2021 WL 3439148
    (5th Cir. Aug. 5, 2021)....................................................................50

*State of Texas v. Savion Vashon Hall*
    Cause No. CR53470, 238th Judicial District Court/Adult Felony Drug
    Court of Midland County, Texas, July 11, 2019 Order................................29

*Thompson v. Upshur Cty*
    245 F.3d 447 (5th Cir. 2001) ..........................................................35

*Tom Green-Barrow v. City of Haltom City*
    4:02cv0900A, 2003 WL 21149661
    (N.D. Tex. May 15, 2003) ...............................................................19

*United States v. Herrera-Ochoa*
    245 F.3d 495 (5th Cir. 2001) ..........................................................30

*United States v. Huntsberry*
    956 F.3d 270 (5th Cir. 2020) ..........................................................30

*Valderrama v. Rousseau*
    780 F.3d 1108 (11th Cir. 2015) .......................................................37

*Van Deelen v. Cain*
    628 Fed. App'x 891 (5th Cir. 2015) ..................................................14

*Webster v. City of Houston*
    735 F.2d 838 (5th Cir. 1984) ..........................................................25

*Westfall v. Luna*
    903 F.3d 534 (5th Cir. 2018) .......................................................26, 52

*Willcoxson v. Thaler*
    CIV.A.H-10-2839, 2012 WL 5943384
    (S.D. Tex. Nov. 27, 2012) ..............................................................45

*Zarnow v. City of Wichita Falls, Tex.*
    614 F.3d 161 (5th Cir. 2010) ............................................................17

**Statute**

42 U.S.C. § 1983 ..............................................................................16

**Rules**

Fed. R. Civ. P. 12 (c).......................................................................13

Fed. R. Civ. P 11 ............................................................................28

Fed. R. Evid. 407 ............................................................................42

**Other Authorities**

5 Wright & Miller § 1216 Federal Practice & Procedure........................15

*State of Texas v. Savion Hall,* Cause No. CR53470, 238th Judicial District Court, Midland County, Texas, July 11, 2019 Order, available at
http://jp.co.midland.tx.us/districtclerk ....................................................29

**Case No. 22-50673**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Angela Robinson, Individually; Clara Busby, as next friend, guardian, and parent of and for minors L.H. and T.H.; Rachel Ambler, as independent Administrator of, and on behalf of, Angela Robinson, minors L.H. and T.H., the Estate of Savion Vashon Hall, and Savion Vashon Hall's heirs at law,
*Plaintiffs - Appellants*

v.

Midland County, Texas; Daniel Stickel,
Defendants – Appellees

On Appeal from
United States District Court for the Western District of Texas
7:21-CV-111

## BRIEF OF APPELLEES
## MIDLAND COUNTY, TEXAS, AND DANIEL STICKEL

TO THE HONORABLE U.S. COURT OF APPEALS FOR THE FIFTH CIRCUIT

This appeal concerns alleged constitutional violations arising out of the custodial death of a pretrial detainee Savion Vashon Hall ("Hall"). Appellants, Hall's heirs, assert claims under 42 U.S.C. § 1983 against Midland County, Texas, (the "County" or "Midland County"), the County's officer Daniel Stickel ("Stickel" or "Officer Stickel"), Soluta, Inc., the medical provider that contracted with Midland County to provide medical services at the jail ("Soluta"), and six nurses employed

by Soluta, Adeola C. Adesomi, Flor Estrada, Timothy Gene Forbush, Jr., Esther Ebelle Ihediwa, Lilian Kerubo Okeri, and Kelly V. Robins (collectively the "Soluta nurses"). Appellants claim the Soluta nurses violated Hall's right to medical care by failing to assess and accurately record Hall's breathing and oxygen levels before and after he received breathing treatments at the Midland County jail. Instead, the Soluta nurses allegedly completed Hall's medical charts with falsified information, making it appear to anyone looking at his charts that Hall was doing well following his treatments when he was not. Appellants claim Midland County is responsible for the alleged acts of the Soluta nurses based on this single incident and claim Officer Stickel is responsible because he was one of the last officers to interact with Hall before Hall left the jail.

Appellees moved for a dismissal under Rule 12(c) of the Federal Rules of Civil Procedure. The district court granted the motion, correctly recognizing that neither of Appellants' claims against Appellees have merit. The district court correctly found that the County cannot be held vicariously liable for the Soluta nurses' actions, and the Appellants failed to show that any County action caused the alleged harm. The district court also correctly rejected Appellants' claims against Stickel, finding that Appellants facts showed Stickel did not cause Hall's harm, and he was not deliberately indifferent to Hall's medical needs, as he did not ignore or intentionally mistreat Hall.

In dismissing Appellants' claims, the district court correctly applied well-established constitutional law to the facts of the case.  Accordingly, the district court's judgment should be affirmed.

## ISSUES PRESENTED

1.    Did the district court correctly find that Midland County is not responsible for the Soluta Nurses' alleged actions?

2.    Did the district court correctly conclude that Stickel was not deliberately indifferent to Hall's medical needs and did not cause the alleged harm?

## STATEMENT OF THE CASE

### I.    This Dispute Concerns the Healthcare Soluta Nurses Provided to Inmate Savion Hall.

This dispute concerns the healthcare certain Soluta nurses provided to Savion Hall while incarcerated at the Midland County jail.  This is not a case where an inmate was refused or completely denied medical care.  Hall was provided medical care, but his condition deteriorated *despite* the medical care provided.

Pretrial detainees have a constitutional right not to have their serious medical needs met with deliberate indifference. Officials violate this right when they ignore, intentionally mistreat, or evidence a "wanton disregard" for the inmate's serious medical needs.  Municipalities violate this right by issuing policies by a policymaker that is the "moving force" behind the violation.  This dispute involves an application of these two standards as to Midland County and Officer Stickel.

Midland County contracted with Soluta to provide medical services to inmates at the Midland County jail. (ROA 76). Soluta was in the business of administering healthcare services to jails. (ROA 75-76). Soluta "took the lead" in developing healthcare policy at the jail, and Soluta employed the healthcare personnel who administered the healthcare at issue in this case. (ROA 49, 77). Appellants seek to hold Midland County and Officer Stickel liable for the healthcare provided by Soluta's licensed nurses. (ROA 21-24, 28, 33, 36, 46, 48, 77).

### 1.    Hall's condition deteriorated despite the medical care provided.

Hall arrived at the Midland County jail on June 21, 2019, following his arrest for a drug-related offense. (ROA 27, 55 ¶74). Although Hall's condition was within "normal limits" at the time of his booking, Hall was noted as having chronic asthma that required hospitalization the day before his arrival at the jail. (ROA 27-28).

While at jail, Hall carried an inhaler and received almost daily breathing treatments. (ROA 29-30, 37, 41, 56). Hall apparently sought his first breathing treatment on June 21, 2019, the date of his booking. (ROA 30). Soluta nurses were supposed to record the breathing treatments on the small volume nebulizer (SVN) Treatment Flo-Sheet (the "SVN Flo-Sheet"). (ROA 29-30). Soluta nurses apparently underreported on the SVN Flo-Sheet the number of times Hall sought breathing treatments. (ROA 59-60). Video evidence indicated that Hall received at

least sixty breathing treatments between June 24, 2019, and July 11, 2019, or three to four times per day.  (ROA 30, 59-60).

Despite receiving daily breathing treatments and having access to an inhaler, Hall's condition deteriorated to the point that he needed emergency medical intervention on July 1, 2019.  (ROA 27-28, ¶19).  On July 1, 2019, Hall sought a breathing treatment at 3:48 a.m.  (ROA 30).  The Soluta nurse noted Hall's condition did not improve following treatment, and Hall was apparently transported to the hospital soon after.  (ROA 27-28, 30).  Hall returned to the jail presumably after the hospital stabilized Hall's condition.  (ROA 27-28, 30).  Almost immediately after returning, however, Hall apparently needed additional medical care.  (ROA 30).  At 10:35 p.m. on July 1, 2019, Hall received another breathing treatment because he was "wheezing".  (ROA 30).

### 2.    Soluta Nurses were not accurately recording Hall's condition.

Soluta nurses apparently failed to assess and accurately record Hall's condition following the breathing treatments.  (ROA 51-53, 59-60).  Before and after each breathing treatment, Soluta nurses were supposed to check Hall's oxygen levels with a sensor and his breathing with a stethoscope and record the results on the SVN Flo-Sheet.  (ROA 29-30, 49-52).  Video evidence apparently confirmed that the nurses failed to check Hall's oxygen levels and assess his breathing before and after his breathing treatments except a handful of times.  (ROA 60).  Despite this, the

SVN Flo-Sheet indicated that Hall's oxygen levels and airways were checked before and after every treatment and generally showed that Hall's condition improved following treatment.   (ROA 30). Noting this discrepancy, the Texas Rangers investigator investigating Hall's death concluded that the Soluta nurses fabricated most the oxygen level and breathing assessment results recorded on the SVN Flo-Sheet. (ROA 60).  This fabrication "made it appear to anyone reviewing [the SVN Flo-Sheet], such as the [Soluta] Doctor Willingham, that Savion [Hall] was doing well with his treatments" when his condition was actually deteriorating.  (ROA 42).

Upon Hall's discharged from the July 1, 2019, hospitalization, the hospital provided Hall with instructions that Hall should return if his condition became "worse".  (ROA 27-28).  Appellants claim Hall had a "worsening condition over the following days" after leaving the hospital, but Soluta nurses did not call EMS.  (ROA 27-28).  However, on July 9, 2019, one of the Soluta nurses wrote that Hall needed a lower bunk due to his asthma (ROA 27-28).

### 3.     Officer Stickel did not interact with Hall until July 11, 2019.

All claims asserted against Officer Stickel arise out of two interactions he had with Hall on July 11, 2019, almost immediately after Hall received breathing treatments.  (ROA 55-58, ¶76).  Officer Stickel had been working as an officer at the Midland County jail since May 9, 2019, with a temporary jailer's license.  (ROA 49, 65).  He began his shift at the Midland County jail at about 10:50 p.m. on the evening

of July 10, 2019.  (ROA 55).  When he arrived, Officer Stickel understood Hall was in medical receiving another breathing treatment.  (ROA 55-56).  Hall's SVN Flo-Sheet indicates Hall received the treatment at about 12:00 a.m. on July 11, 2019.  (ROA 30).  Regardless of the timing, Stickel's first interaction with Hall occurred at 12:30 a.m., shortly after Hall was seen by medical. (ROA 30, 56).

Hall approached the guard station at 12:30 a.m.  (ROA 56).  He was reportedly having trouble breathing, wheezing, and indicated that he was about to pass out. (ROA 56-57).  Based on Appellants' allegations, this was not necessarily unusual.  Appellants claim Hall's "issue [was] continuous over time – the inability to breath." (ROA 42, ¶46).  Hall apparently was wheezing every time he went to medical for breathing treatments.  (ROA 30).   Hall asked Stickel if he could return to medical for another breathing treatment.  (ROA 56).

Stickel was aware that the on-duty nurse would allow inmate Hall to return to medical for additional breathing treatments about every four hours.  (ROA 56).  Stickel informed Hall of the issue but decided to call medical to confirm.  (ROA 56).  Stickel spoke with Officer Jimenez, who was manning the special housing guard station, and Officer Jimenez contacted the on-duty nurse, who stated that Hall could not return for a breathing treatment until about four hours after his last treatment. (ROA 56).  Stickel told Hall he would keep an eye on Hall, and Stickel checked on Hall "multiple times."  (ROA 56-57).

Based on the SVN Flo-Sheet, Hall apparently requested and went to medical around 4:00 a.m. to receive his second breathing treatment during Officer Stickel's shift. (ROA 30). According to "anyone reviewing [Hall's] records", following his treatment, Hall's condition improved and he "was doing well". (ROA 30, 42 ¶46). After the treatment, Hall apparently returned to his cell without issue and voiced no additional complaint until 6:15 a.m. (ROA 57).

Officer Stickel's next interaction with Hall occurred at 6:15 a.m. (ROA 57). Hall again approached the guard station and requested to see medical. (ROA 580). Although it had been less than four hours since his last breathing treatment, Officer Stickel called special housing to request whether Hall could return to medical for an additional breathing treatment. (ROA 57-58). Stickel did not receive an answer at that time. (ROA 57-58). Stickel saw Hall had his inhaler and ensured that Hall still had medication in his inhaler. (ROA 57-58).

Officer Stickel's relieving officer, Officer Clark, arrived before 6:55 a.m. for a shift change. (ROA 58). Officer Stickel informed Officer Clark of Hall's condition, discussing how many times Officer Stickel sent Hall to medical and that Hall was having trouble breathing. (ROA 58). During rollcall, Officer Clark asked Officer Stickel to call medical. (ROA 58). At 6:55 a.m., Officer Stickel called medical and confirmed that Hall could go down to medical for a third breathing treatment. (ROA 58).

**4.     Soluta Doctor Willingham did not immediately call EMS.**

Doctor David Barry Willingham was the Soluta doctor working at the jail at the time of the incident.  (ROA 49).  He happened to be in medical at the time Hall arrived for his third breathing treatment.  (ROA 51-52).  When Hall arrived at medical, Doctor Willingham did not immediately call for EMS or call a medical emergency.  (ROA 30, 49-52).  Instead, Doctor Willingham went through the standard procedure to assess and administer a breathing treatment.  (ROA 30, 49-52).  According to the Texas Rangers, this is one of the few times the video evidence confirmed the procedure was correctly followed and the SVN Flo-Sheet "most accurately reflects" what occurred.  (ROA 52).

Dr. Willingham first examined Hall, checking his oxygen levels and breathing prior to administrating the nebulizer treatment.  (ROA 30).  Then Dr. Willingham provided Hall the breathing treatment, which based on Appellants' allegations took between ten to fifteen minutes.  (ROA 30, 32).  After administrating the treatment, Dr. Willingham reassessed Hall's oxygen levels and breathing.  (ROA 30).  Dr. Willingham noted there was no improvement after the breathing treatment, and EMS was called soon after.  (ROA 30, 53).

**5.     Hall's condition was beyond saving by July 11, 2019.**

Hall's condition was beyond saving as of July 11, 2019.  After Dr. Willingham's assessment, Hall was transported to the Midland Memorial Hospital

for emergency medical intervention. (ROA 53-54). On July 13, 2019, Midland Memorial Hospital transported Hall to UMC in Lubbock County, Texas. (ROA 54). Despite receiving a week of twenty-four-hour care from hospitals, Hall passed away in the Lubbock hospital on July 19, 2019. (ROA 54-55).

Midland County reported Hall's death as a custodial death to the Attorney General of Texas and the Texas Commission on Jail Standards. (ROA 54-55). The Midland County Sheriff's Office performed an investigation, and the Texas Rangers were called to investigate. (ROA 55, 59).

## II.   The District Court Dismisses Appellants' Claims against Midland County and Stickel.

On June 16, 2021, Appellants filed suit against Soluta, the Soluta nurses, Midland County, and Officer Stickel asserting claims under 42 U.S.C. § 1983. (ROA 15). Soluta and the Soluta nurses reached a settlement agreement with Appellants. (ROA 656-57). The district court issued an order on June 30, 2022, approving the settlement agreement reached by and between Appellants, Soluta, and the Soluta nurses. (ROA 678-83).

On September 3, 2021, Midland County and Officer Stickel moved for a summary dismissal of all claims under Rule 12(c) of the Federal Rules of Civil Procedure. (ROA 245). On April 2, 2022, the Court entered its order granting the motion to dismiss filed by Midland County and Officer Stickel. (ROA 631-54). The district court held Appellants' allegations failed to demonstrate that Officer Stickel

was deliberately indifferent to Hall's needs.  (ROA 640-45).  The district court
dismissed the claims against Midland County because the allegations did not show
Midland County's policies were the moving force of any violation.  The Court
rejected Appellants' various theories purporting to make Midland County liable for
the Soluta nurses' actions based on the single incident.  The district court noted there
were no allegations of prior similar incidents that would have put Midland County
on notice of the alleged violations by the Soluta nurses.  (ROA 649-53).

The district court entered its final order of dismissal on July 6, 2022.  (ROA
685).  This appeal followed.  (ROA 691).

## SUMMARY OF THE ARGUMENT

The district court correctly dismissed Appellants' claims against Stickel and
the County.  This case turns on the application of established constitutional law.  To
assert a claim against Midland County under 42 U.S.C. § 1983, Appellants must
allege facts demonstrating that the County, through a policy enacted by a
policymaker, subjected Hall to the claimed deprivation.  There is no vicarious
liability for claims asserted under § 1983.  To assert a claim against Stickel,
Appellants had to show Stickel acted with deliberate indifference to Hall's medical
needs that caused the claimed harm.  Appellants' pleadings failed to allege such facts.

Appellants failed to show the County caused Hall's harm.  Appellants attempt
to hold the County vicariously liable for the alleged acts and omissions of the Soluta

nurses. Appellants do not claim there were prior incidents that put the County on notice that Soluta or its nurses were violating inmates' rights. Appellants do not claim the County was aware of the nurses' actions. Appellants do not show that the Soluta nurses' actions were somehow the result of County policy, or that the County failed to take corrective action once it discovered the nurses' actions. Appellants merely point to the incident in support of their claims against the County. While Appellants assert various theories attempting to dance around vicarious liability, none of their theories fit the facts of this case. Further, none of the alleged County policies cited by Appellants were the moving force of the harm.

Similarly, Appellants failed to show that Stickel acted with deliberate indifference that caused Hall's harm. Deliberate indifference is a difficult standard to meet. It is generally shown by acts of refusing to treat, ignoring medical needs, or intentionally mistreating them. Stickel did not do this. He always responded to Hall's requests. He ensured that Hall had medications on hand. He relied upon the advice of medical regarding the timing with which Hall could receive additional treatments. Further, Hall received three breathing treatments during Stickel's shift. Appellants claim a lay person would have known Hall was struggling, but not even Hall's treating physician initially recognized that Hall was in a medical emergency. At best, Appellants' claim is one for delay in care, but that delay did not cause the claimed harm. Hall was beyond saving as of the day Stickel interacted with him, as

not even a week of around the clock medical care could save him. Appellants' facts fail to show a claim against Stickel, and their claims are barred by qualified immunity.

The claims against the County and Stickel were correctly dismissed. The district court's judgment should be affirmed.

## STANDARD OF REVIEW

This case involves review of an order granting a motion to dismiss filed under Rule 12(c) of the Federal Rules of Civil Procedure. This Court reviews Rule 12(c) dismissals *de novo*. *Hale v. Metrex Research Corp.*, 963 F.3d 424, 427 (5th Cir. 2020).

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009) (internal quotations omitted). Dismissal for failure to state a claim "turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 135 S.Ct. 346, 347 (2014) (per curiam)). "When faced with a Rule 12(b)(6) motion to dismiss . . . courts must . . . accept all factual allegations in the complaint as true. We must also draw all reasonable inferences in the plaintiff's favor." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal citations omitted).

"When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (internal quotations and citations omitted). "[C]ommon sense plays a role in the inquiry . . . [and] [w]here context provides one and only one answer, the absence of documentary . . . support does not require a court to ignore the obvious or accept the incredible." *Van Deelen v. Cain*, 628 Fed. App'x 891, 895 (5th Cir. 2015).

Rule 12(b)(6) is also read in conjunction with Federal Rule of Civil Procedure 8(a) ("Rule 8(a)"), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009) (citing Fed. R. Civ. P. 8(a)(2)). "[A] complaint may simultaneously satisfy Rule 8's technical requirements but fail to state a claim under Rule 12(b)(6)." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *Bank of Abbeville & Tr. Co. v. Commonwealth Land Title Ins. Co.*, 201 Fed. App'x. 988, 990 (5th Cir. 2006) (unpublished)). "'Rule 8(a)(2) specifies the conditions of the *formal* adequacy of a pleading,' but '[i]t does not specify the conditions of

its *substantive* adequacy, that is, its legal merit.'" *Id.* at 385-86 (quoting *Bank of Abbeville*, 201 Fed. App'x. at 990).

To survive a motion to dismiss on the pleadings, a complaint must provide enough facts to state a claim for relief that is plausible on its face. *Jebaco, Inc. v. Harrah's Operating Co.,* 587 F.3d 314, 318 (5th Cir. 2009). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. When "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citing 5 Wright & Miller § 1216, at 233–234) (internal quotations and alterations omitted).

## ARGUMENT

### ISSUE I: Did the district court correctly find that Midland County is not responsible for the Soluta Nurses' alleged actions?

The district court correctly found that Midland County is not responsible for the alleged acts and omissions of the Soluta nurses. The crux of Appellants' liability theory is Soluta's nurses delayed emergency medical care Hall needed by failing to properly assess and record Hall's condition before and after his breathing treatments. Instead, the Soluta nurses allegedly falsified Hall's oxygen level and breathing results in his records. This prevented *anyone*, including Hall's treating physician,

from assessing how Hall's asthmatic condition was deteriorating over his three-week stay at the jail despite the treatment provided. Appellants attempt to hold Midland County responsible for the nurses' actions by claiming (1) Midland County's contract with Soluta made Soluta the County's final policymaker for the provision of medical services, and (2) based solely on the Soluta nurses' actions in this case, Soluta had a practice or custom of falsifying medical charts, a practice which harmed Hall in this case and for which Midland County should be held liable. Appellants arguments are nothing more than a recasting of *respondeat superior* liability. The County cannot be held vicariously liable for the Soluta nurses' actions under 42 U.S.C. § 1983. The district court correctly dismissed Appellants' claims.

### 1. Appellants' burden was to demonstrate how the County caused the claimed harm.

Regardless of Appellants' theory of liability, to assert a claim against Midland County under 42 U.S.C. § 1983, Appellants must allege facts supporting all the elements of the "*Monell* test," that is: (1) an official policy (2) promulgated by the municipal policymaker (3) that was the moving force behind the violation of a constitutional right. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A municipality such as Midland County may be liable under Section 1983 only "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). No vicarious liability exists under § 1983. *City*

*of Canton v. Harris*, 489 U.S. 489 U.S. 378, 385 (1989) ("*Respondeat superior* or vicarious liability will not attach under § 1983.").

"[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Therefore, a plaintiff basing liability on a county's "custom" must show a pattern of "sufficiently numerous prior incidents" that are both similar and specific, as opposed to only "isolated instances." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)). This standard is a stringent one and operates "to prevent a collapse of the municipal liability inquiry into a *respondeat superior* analysis." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown,* 520 U.S. 397, 415 (1997)). "Municipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation." *Id.* (citing *City of Canton, Ohio v. Harris,* 489 U.S. 378, 391-92 (1989)). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404. A plaintiff meets the culpability showing ***only if*** the municipality promulgated a policy with deliberate indifference to the

"known or obvious consequences" that constitutional violations would result. *Id.* at 407.

## 2. Appellants fail to allege any County action caused the Soluta Nurses' actions

The district court's dismissal was proper because Appellants failed to provide any facts showing the Soluta nurses actions were those of the County. Most of Appellants' allegations concern the alleged acts and omission of the Soluta nurses. Appellants do not claim the Soluta nurses were acting in accordance with an official County policy or even a Soluta policy. Instead, they claim their actions in this case evidenced some practice or custom that should be attributable to the County. "Contrary to [Appellants'] theory, [they] cannot bootstrap government entity liability from the individual failures of employees because there is no *respondeat superior* liability under Section 1983." *Sanchez v. Young County, Tex.*, 866 F.3d 274, 281 (5th Cir. 2017).

Appellants had to alleged facts that would have put the County on notice of the alleged practice to transform the Soluta nurses' actions into that of the County. Courts require a pattern of similar violations that "occurred for so long or so frequently" that it "transcends the error made in a single case". *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850-51 (5th Cir. 2009). This can only be done by pointing to the County's knowledge of "sufficiently numerous prior incidents" that are both similar and specific, as opposed to only "isolated instances." *Id*; *see, e.g.*,

*Fuentes v. Nueces County, Texas*, 689 Fed. Appx. 775, 778 (5th Cir. 2017) (three

prior incidents not sufficient); *Jackson v. Valdez*, 3:18-CV-2935-X-BH, 2020 WL

1428775, at *6 (N.D. Tex. Feb. 27, 2020), *report and recommendation adopted*,

3:18-CV-02935-X-BH, 2020 WL 1339923 (N.D. Tex. Mar. 23, 2020) (four prior

incidents not sufficient).  Other than the treatment of Hall in this case, Appellants'

allegations direct the Court to none.

    While Appellants criticize the district court's reliance on *Piotrowski v. City of

Houston*, the rule still stands that "the unconstitutional conduct must be directly

attributable to the municipality through some sort of official action or imprimatur."

237 F.3d 567, 578 (5th Cir. 2001).  "Further, a municipality is almost never liable

for an isolated unconstitutional action on the part of an employee."  *See Sanchez v.

Young County, Tex.*, 866 F.3d 274, 280 (5th Cir. 2017) (internal alterations and

quotations omitted).

    Appellants fail to direct the Court to any prior instances that would even

arguably have put the County on notice of an alleged practice of the Soluta nurses'

to falsify medical records.  This fails to state a claim for relief.  *See, e.g.*, *Tom Green-

Barrow v. City of Haltom City*, 4:02CV0900A, 2003 WL 21149661, at *3 (N.D. Tex.

May 15, 2003) (granting motion to dismiss where plaintiff failed to "allege any

previous incidents" that would have given defendant notice that its policy "would

result in the specific injuries alleged here" citing *Pineda v. City of Houston,* 291 F.3d

325, 330 (5th Cir.2002) and *Barney v. Pulsipher,* 143 F.3d 1299, 1309 n. 8 (10th Cir.1998)), *aff'd sub nom.*, 106 Fed. Appx. 912 (5th Cir. 2004). Appellants had to allege facts that "allow the court to draw the reasonable inference that any of these events were anything more than isolated incidents". *See Saenz v. City of El Paso*, 637 Fed. Appx. 828, 831–32 (5th Cir. 2016) (holding twenty-one separate instances of killing by police over span of nineteen years insufficient to demonstrate a custom or practice); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (holding that twenty-seven alleged instances of excessive force over a four-year period were insufficient for the court to conclude that "the City maintained an official policy of condoning excessive force"). The failure to do this is fatal to their claim. The district court properly granted the County's motion to dismiss.

### 3.    The district court correctly rejected County liability based on delegation.

Appellants attempt to argue around *respondeat superior* by claiming Midland County contract's with Soluta made Soluta a policymaker for healthcare services, thereby making the County responsible for Soluta and its nurses' acts and omissions. Appellants do not cite any Fifth Circuit authority either expressly adopting or exploring the contours of this delegation of a "non-delegable" duty argument. Instead, Appellants cite *Rodriguez v. S. Health Partners, Inc.*, No. 3:20-CV-0045-D, 2020 WL 7056336 (N.D. Tex. Dec. 2, 2020) ("*Rodriguez*"), which itself cites two out-of-circuit cases regarding a county's non-delegable duty for medical care. *Id.* at

*13 (citing *King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012) and *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 705–06 (11th Cir.1985)).  These cases, however, do not hold a county liable for the bad acts of the contract provider's employees merely because the provider is in contract to provide medical services.  Instead, the cases recognize liability where county action caused the deprivation at issue, allegations wholly absent from Appellants' pleadings.  Moreover, Appellants fail to demonstrate how the County's contract provided Soluta with final policymaking authority.  The district court correctly rejected these arguments.

> ### a.    *Liability based on delegation requires County action that Appellants failed to show.*

Regardless of how Appellants frame the argument, delegation is not an elixir allowing Appellants to now hold the County vicariously liable for the acts of the Soluta nurses.  Appellants must still show County action.  The cases Appellants cite in support of their "delegation" argument demonstrate the same.

In *Rodriguez* and in Seventh Circuit opinion *King v. Kramer*, the alleged violating policies at issue were contained in the contracts for medical services. *See King*, 680 F.3d at 1021 (noting two "express policies as embodied in the contract" that showed "the County delegated to [the medical provider] final authority to make decisions about inmates' medical care"); *Rodriguez*, 2020 WL 7056336, at *13 (noting "the policies at issue arise out of the contract between Navarro County and [the medical provider]" and the county sheriff both approved and was familiar with

the contract and its contents). In *King*, there were two policies at issue "embodied in the contract". *Id.* One restricted access to physicians and another established "prescription formularies" precluding certain prescriptions from being brought into the jail. *Id.* at 1020-21. While neither policy by itself was inappropriate, it was "the County's **endorsement** of the particulars of the arrangements ***in this case*** and the way the two policies interacted, that caused it to run afoul of the Constitution.". *Id.* (emphasis added). Moreover, the county was aware of multiple *prior* incidents where these policies had created similar issues. *Id.* Hence, *Rodriguez* and *King* both stand for the unremarkable point that the County is still responsible for its policies even if those policies are contained in a third-party medical services provider contract.

Similarly, the liability finding in *Ancata v. Prison Health Servs., Inc.,* the Eleventh Circuit opinion cited in *Rodriguez*, was directly attributable to county action. In *Ancata*, the plaintiff alleged "limited funds provided by the County [to the medical services provider] may have contributed to deliberate indifference shown for the serious medical needs of [the inmate]." *Ancata*, 769 F.2d 700, 705 (11th Cir.1985). The *Ancata* Court noted the county had a duty to provide medical care to incarcerated individuals and that this "duty is not absolved by contracting with an entity" to provide medical services. *Id.* The county could not avoid this duty by contracting with a medical services provider and then wholly fail to fund

that provider. *Id.* The county had a "non-delegable" duty to provide medical care, and to the extent "lack of funds" caused the provider to provide deficient medical care, the county was "liable for any constitutional deprivation caused by the policies or customs of the Health Service [provider]" *Id.* ("Lack of funds for facilities cannot justify an unconstitutional lack of competent medical care and treatment for inmates.").

Appellants make no such similar connection between Midland County and the Soluta nurses. There are *no* allegations that Midland County somehow prompted the Soluta nurses' to decide to falsify Hall's medical records. There is no allegation that the County was aware of the nurses' actions "in this case" or of prior similar incidents. There are no allegations that the alleged "de facto" policy (falsifying medical records) was somehow contained or "embodied" in Midland County's contract with Soluta or that Midland County endorsed such a policy. Appellants do not even allege that the Soluta physician, Dr. Willingham, who presumably supervised the Soluta nurses, was aware of or endorsed the Soluta nurses' action. (ROA 42 ("in falsifying medical records, [the Soluta nurses] made it appear to anyone reviewing those records, such as Doctor Willingham, that Savion was doing well with his treatments")). In contrast, Appellants allege the Soluta physician *condemned* the practice and did not practice it, as he was the one who "correctly"

assessed Hall on July 11, 2019. (ROA 51-52). The district court correctly rejected the delegation argument.

> ### b.    *Appellants failed to show how the contract for medical services made Soluta a final policymaker.*

The district court also correctly rejected Appellants' argument that Midland County made Soluta a "final policymaker". Based on Appellants' cited cases, to show that Soluta was a final policymaker, Appellants had to directly cite the policies and provisions contained in the contract at issue that made Soluta a policymaker. *See King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012) (holding "the County's express policies as embodied in the contract show that the County delegated to [the medical provider], final authority to make decisions about inmates' medical care."). Instead of showing how the contract delegated final policymaking authority, Appellants make general, conclusory allegations of delegation and vague references that Soluta "took the lead" in developing and maintaining the jail's healthcare policies. (ROA 77). General allegations of "joint effort" or "took the lead" does not establish final policymaking authority. *See, e.g.*, *Rodriguez v. S. Health Partners, Inc.*, 3:20-CV-0045-D, 2020 WL 2928486, at *8 (N.D. Tex. June 3, 2020) (considering whether liability could be assessed against the medical provider as a governmental entity and holding "the mere fact that [the medical provider] 'collaborated and agreed' to provide medical care at the Jail . . . does not, without more, transform [the medical provider] into a policymaker with final policymaking

authority for the Jail"). It is one thing to contract with professionals and provide them autonomy to use their expertise to assist the County in fulfilling a duty to provide medical care. It is another to make the provider someone who "acts in lieu of the governing body". *Id.* ("Policymaking authority requires more than a showing of mere discretion or decision making authority" but an "acknowledge[ment] that the agent acts in lieu of the governing body" citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984), *on reh'g*, 739 F.2d 993 (5th Cir. 1984)). The district court correctly rejected these arguments.

### 4. The district court correctly rejected Appellants' single incident exception and ratification theories.

Incredibly, Appellants claim they do not need to show evidence of County action or prior incidents of Soluta nurses. They claim the Soluta nurses' actions alone justifies holding the County liable. In support, they rely on the "rare" "single-incident" exception, such as that applied in *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) and a "ratification" exception discussed in the more recent decision *Sanchez v. Young*, 956 F.3d 785 (5th Cir. 2020). Both cases are distinguishable, and neither supports a finding that Midland County should be held responsible for the Soluta nurses' actions.

This Court has repeatedly emphasized that *Grandstaff* and the single-incident exception are applied only in "extraordinary" circumstances, such as where an entire police department opens fire indiscriminately on a slow-moving pickup truck at

night.  *See Lansdell v. Miller*, 817 Fed. Appx. 27, 29 (5th Cir. 2020) (holding *Grandstaff* is "limited" to "extreme factual situations").  This Court has cautioned against applying the exception to circumstances not involving the indiscriminate use of deadly force.  *See, e.g.*, *Saenz v. City of El Paso*, 637 Fed. Appx. 828, 832 (5th Cir. 2016) (rejecting application of the "rare" "single-incident" exception and distinguishing the case from hypotheticals involving indiscriminate uses of deadly force).  Application of the single-incident exception was justified in *Grandstaff* not solely because the final policymaker failed to reprimand the actions of the entire department, but because the final policymaker failed to do so when the department had indiscriminately used *deadly* force against an innocent bystander.  *Westfall v. Luna,* 903 F.3d 534, 553 n.7 (5th Cir. 2018).[1]  It was the indiscriminate use of deadly force, the most aggressive form of government action, that "demanded greater attention from the city".  *Id.*

Appellants' facts are wholly distinguishable from *Grandstaff*.  This case does not involve the indiscriminate use of deadly force, but of nurses deciding not to properly complete an inmate's medical chart.  There is no allegation that the County failed to take corrective actions afterwards.  There is no allegation that the County

---

[1] "Indeed, in *Grandstaff*, the disposition of the policymaker was inferred from his conduct after the events of that night, such as the fact that there were no reprimands, no discharges, and no admissions of error.  But the episode in *Grandstaff*, involving gunfire and the death of an innocent person, was one of 'dangerous recklessness' that demanded greater attention from the city." *Westfall*, 903 F.3d at 553 n. 7 (internal citations omitted).

Sheriff or the nurses' supervisors (like Dr. Willingham) adopted, endorsed, or participated in the Soluta nurses' actions. This is *not* the case where an "entire department" with the "policymaker" head uniformly participated in an obvious violation. Appellants cite no authority that *Grandstaff* can or should be expanded to apply to a municipality *vis-à-vis* the acts of its contracting healthcare provider's employees. There is no allegation the County or its policymaker was even aware of the incident and its details yet failed to act. The Court should reject Appellants' application of *Grandstaff*.

Similarly, the Court should reject Appellants' "ratification" theory. In support of this theory, Appellants rely on a suicide case *Sanchez v. Young County, Tex.*, 956 F.3d 785 (5th Cir. 2020), but *Sanchez* is distinguishable. Unlike here, in *Sanchez* (1) there were prior reports of similar alleged occurrences (inadequate inmate monitoring); (2) the County sheriff "knew" the "details" of those prior reports; (3) the County sheriff failed to take any corrective action in response to the prior reports; (4) the County sheriff knew the details of the inmate death at issue and that it also involved issues of inadequate monitoring; and, yet, (5) the County sheriff failed to either discipline the officers involved or correct the jail's alleged deficiencies. *Sanchez*, 956 F.3d at 792–93. Here, there are no allegations of prior reports of Soluta nurses allegedly falsifying medical records; there are no allegations that the Midland County Sheriff knew of these prior reports but took no action; there are no

27

allegations that the Midland County Sheriff was aware of the details of the allegations at issue here (falsification of medical records by non-employee jail nurses) but did nothing in response or failed to take any corrective action. The facts Appellants certified as having evidentiary support fail to include *any* element to support a ratification claim under *Sanchez*. *See* Fed. R. Civ. P. 11. The district court correctly rejected these theories.

### 5. Hall's release from custody on July 11, 2019, did not demonstrate ill motive by the County.

Perhaps in lieu of having other evidence in support of ratification, Appellants point to Hall's release from custody on July 11, 2019, as a substitute. From this fact, Appellants make the unwarranted conclusion that "nothing" can explain Hall's release on July 11, 2019, except either a County cover up or a motive to save money. Appellants' conclusion is wrong.

July 11, 2019, was not the first time Hall went to the hospital allegedly on the County's dime. He also went to the hospital on July 1, 2019. (ROA 27-28). If the County was intent on saving money from hospital stays, one would think the County would have sought a release for both stays, not just one. Similarly, while Appellants argue the release was a County cover up, Midland County reported the incident as a custodial death, investigated the incident, and involved the Texas Rangers. (ROA 54, 55, 59). If the County was attempting to avoid liability by releasing Hall from

custody, one would think it would not have reported the incident as a custodial death and investigate it.

While making unwarranted conclusions, Appellants overlook the more logical explanation contained within their pleadings.  Hall was ultimately transferred out-of-county to another hospital for further treatment.  (ROA 53-54).  Releasing an inmate to a hospital's custody to allow more flexible treatment, including a transfer to an out-of-county hospital, appears to be a more "common sense" explanation for the release from the County's custody.

Appellants' argument is also off-target because the release is not even evidence of County action.  A state court judge ordered the release to the hospital and ordered Hall to return after his discharge from the hospital.  *See State of Texas v. Savion Vashon Hall*, Cause No. CR53470, 238th Judicial District Court/Adult Felony Drug Court of Midland County, Texas, July 11, 2019 Order, *available at http://jp.co.midland.tx.us/districtclerk* ("By this Order of the Court . . . The Defendant, Savion Vashon Hall, is to be released on Thursday July 11, 2019, from the Midland County Jail to Midland Memorial Hospital, Midland, Texas to receive medical treatment.  The Defendant, Savion Vashon Hall, is to return to the Midland County Jail upon release from Midland Memorial Hospital, Midland, Texas.").

This Court should take judicial notice of the state court's order releasing Hall. "An appellate court may take judicial notice of facts, even if such facts were not

noticed by the trial court." *United States v. Huntsberry*, 956 F.3d 270, 284–85 (5th Cir. 2020) (quoting *Herrera-Ochoa*, 245 F.3d 495, 501 (5th Cir. 2001)). This Court can also "enlarge the record to include material not before the district court". *Id.* (citing and quoting *Gibson v. Blackburn*, 744 F.2d 403, 405 n.3 (5th Cir. 1984)). This includes judicial notice of facts from Hall's criminal record, even if such records were never introduced or noticed by the trial court. *Id.* "It is well-settled that courts may judicially notice court records as evidence of judicial actions." *Id.*

This Court "does not" and should not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Emmons v. Painter*, MO:20-CV-00185-DC, 2021 WL 2832977, at *5 (W.D. Tex. May 23, 2021) (quoting *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.,* 365 F.3d 353, 361 (5th Cir. 2004) while reviewing claims asserted under § 1983). This is what Appellants request the Court to do here. The district court correctly rejected this argument as "speculation", and this Court should do the same.

### 6.     The alleged Midland County policies were not the moving force of the violation.

While wholly failing to show how the County caused the Soluta nurses' actions, Appellants argue County policy somehow interacted with Soluta nurses' actions to cause the violation. Appellants point to the alleged policies of (1) housing inmates too far away from treatment; (2) only calling medical emergencies when an inmate in unconscious or unresponsive; (3) hiring officers with temporary jailer

licenses; and (4) understaffing medical personnel.  The district court correctly rejected this argument because *none* of the alleged policies were the moving force of the claimed harm.

.  Allegedly housing inmates "too far away" from the medical clinic had nothing to do with the incident.  Appellants' allegations confirm Hall arrived at medical to receive breathing treatments at least sixty times regardless of his cell location, including three times on his final day at the jail.  (ROA 30, 57-60).  The distance between Hall's cell and medical is irrelevant.

The allegations also fail to show how Stickel's temporary jailer's license caused the alleged violation.  Appellants complain that Stickel did not have CPR or first aid training, but Hall's injuries did not result from an alleged failure of Stickel to apply CPR or first aid.  (ROA 65 ¶93).  Appellants' pleadings also do not show a causal link between the alleged lack of training or temporary licenses and the incident.  There are no prior incidents of alleged issues contrasting jailers with and without "normal" licenses.  While Appellants argue the putative licensed guard Officer Clark "intervened" and got Hall medical attention, this is not what Appellants allege.  Appellants allege that "when Officer Clark entered J Block as the relieving officer [for Stickel], [Stickel] informed her of Inmate's Hall's situation and how many times [Stickel] had sent [Hall] down to medical for a breathing treatment over the night."  (ROA 58).  It was Stickel who brought Hall's condition to Officer

Clark's attention.  While Officer Clark did tell Stickel to call medical, it was Stickel who called medical and got Hall to his third breathing treatment.  (ROA 58).  It was also Stickel who got Hall to his second breathing treatment at 4:00 a.m. (ROA 30).

The "temporary license" claim appears to be a half-hearted attempt at alleging a failure to train claim.  Appellants "sprinkle" facts in their Complaint about Stickel only having a temporary jailer's license and not yet taking courses necessary to obtain a jailer's license.   Even discounting that Stickel had six-weeks of on-the-job training prior to the incident, courts in this circuit have dismissed failure to train claims based on similar allegations.   *Rowland v. Sw. Corr., LLC*, 420CV00847ALMCAN, 2021 WL 4206409, at *6 (E.D. Tex. Aug. 17, 2021), *report and recommendation adopted*, 4:20-CV-847, 2021 WL 4191433 (E.D. Tex. Sept. 15, 2021) (holding the "sprinkling" of "temporary licenses" to be "insufficient to plead a claim for failure to train").

Likewise, the alleged medical emergency policy (only call a medical emergency when an inmate is unconscious) was not a moving force of the violation. Stickel did not wait until Hall was unconscious before seeking medical attention. Hall went to medical three times on his shift.  While Appellants allege (or argue) that it *could* be dangerous to wait until someone is unconscious before seeking medical attention on their behalf, this is not what happened to Hall or what allegedly caused his injury.

The alleged "understaffing" of nurses did not cause the alleged violation. Appellants do not show how understaffing caused the Soluta nurses to decide to falsify Hall's medical records. Appellants also fail to show how the County caused any alleged understaffing. The allegations do not even support Soluta was understaffed. The "understaffing" allegation derives from Appellants' interpretation of a comment made by one of the Soluta nurses who described work as "organized chaos, sometimes". (ROA 43). That work can be hectic does not show understaffing.

### 7. Midland County is not liable based on a conditions of confinement theory.

Finally, Appellants' pleadings fail to show that Midland County is liable under any conditions of confinement theory. To prevail on a conditions-of-confinement theory, Appellants must show a "condition—a 'rule,' a 'restriction,' an 'identifiable intended condition or practice,' or 'sufficiently extended or pervasive' 'acts or omissions' of jail officials—that is not reasonably related to a legitimate government objective and that caused the constitutional violation." *Sanchez v. Young County, Tex.*, 956 F.3d 785, 791 (5th Cir. 2020). Although Appellants cite several alleged "conditions"—such as understaffing, housing assignments, and the calling medical emergencies—as discussed above, none of these alleged "conditions" had *anything* to do with the alleged violation. Appellants' do not claim that a condition caused Hall's harm. Appellants claim that the defendant nurses' alleged *decision* to falsify medical records prevented Soluta's physician from correctly

assessing Hall's deteriorating condition.  Appellants "ha[ve] not plausibly alleged that a municipal *policy*, rather than the individual *decision* of a municipal employee, was the actual cause of the constitutional violation." *Rodriguez v. S. Health Partners, Inc.*, No. 3:20-CV-0045-D, 2020 WL 7056336, *14 (N.D. Tex. Dec. 2, 2020) (internal quotations omitted, emphasis in original).  While Appellants attempt to turn the individual decisions into policy via *Grandstaff*, this is improper for the reasons previously discussed.  For all these reasons, the district court properly dismissed Appellants' *Monell* claims against Midland County.

## ISSUE II: Did the district court correctly conclude that Stickel was not deliberately indifferent to Hall's medical needs and did not cause the alleged harm?

The district court correctly held that Stickel did not cause the claimed harm or act with deliberate indifference to Hall's medical needs. Appellants' claim Stickel should have or could have done more for Hall during the final six hours of Hall's stay at the jail despite Hall receiving three breathing treatments during his shift. Appellants also argue that Stickel's alleged failure to act minutes earlier could have made a difference for a person whose health had deteriorated for weeks and was past the point of saving.  Both arguments fail based on established principles of law and Appellants' pleaded facts.

> **1. Appellants have to show that Stickel acted with deliberate indifference in delaying care and the delay caused Hall substantial harm.**

"[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001) (internal citation omitted).[2] Deliberate indifference means that: "(1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates the official subjectively intended that harm to occur." *Id.* at 458–59.

"[A]ctual knowledge is critical to the inquiry. A state actor's failure to alleviate 'a significant risk that he should have perceived but did not' . . . does not rise to the level of deliberate indifference." *McClendon v. City of Columbia*, 305 F.3d 314, 326 n.8 (5th Cir. 2002). Moreover, deliberate indifference "cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Upshur Cty.*, 245 F.3d at 459. Instead, deliberate indifference is a "stringent standard of fault." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997). Moreover, "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even

---

[2] The Fourteenth Amendment confers to pretrial detainees the same rights to medical care as those conferred by the Eighth Amendment to convicted prisoners. *Brown v. Bolin*, 500 Fed. Appx. 309, 318 (5th Cir. 2012) (citing *Hare v. City of Corinth,* 74 F.3d 633, 649 (5th Cir. 1996)).

laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n. 12 (5th Cir. 2006).

Further, while a delay in providing treatment can establish a claim for relief, to establish a claim, the prisoner must also show the delay in treatment caused substantial harm. *See Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) ("The mere delay of medical care can also constitute an Eighth Amendment violation but *only if* there has been deliberate indifference that results in substantial harm." (internal quotations and alterations omitted) (emphasis added)); *see, e.g.*, *Grant v. Collins*, 3 F.3d 439 (5th Cir. 1993) (holding "[b]ecause [the prisoner] failed to establish any resulting substantial harm occasioned by the alleged neglect, his claim has no arguable legal basis"); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm.*" (emphasis added)); *see also Flores v. Jaramillo*, 389 Fed. Appx. 393, 395 (5th Cir. 2010) (holding same as to pretrial detainee's Fourteenth Amendment rights).

### 2.    Stickel could not have caused substantial harm because Hall was beyond medical saving as of July 11, 2019.

Any delay caused by Stickel on the last morning of Hall's three-week stay at the jail did not cause Hall substantial harm.  Before Stickel ever encountered Hall on July 11, 2019, Hall's condition had deteriorated to a point that he was beyond saving.  Appellants do not claim that the twenty-four-hour medical care Hall

received at the hospitals from July 11 to July 19 was deficient.  Despite this, Hall passed away.  Not even a week of twenty-four-hour care could save Hall as of July 11, 2019.

To "side-step" the causation issue, Appellants inappropriately analogize Hall's condition on July 11, 2019, to a "sudden onset" emergency like a heart attack, drug overdose, or a gunshot wound. *See, e.g.*, *Sims v. Griffin*, 35 F.4th 945, 950 (5th Cir. 2022) (bag of drugs swallowed caused increasing overdose symptoms in the hours following); *Valderrama v. Rousseau*. 780 F.3d 1108, 1120 (11th Cir. 2015) (gunshot wound to the groin).   Hall, however, did not suffer from a "sudden onset" emergency like a heart attack, drug overdose, or a gunshot wound.  Hall had been at the jail for weeks and allegedly "suffered over a lengthy period of time" as his "issue [was] continuous over time – the inability to breath."  (ROA 42 ¶46, 44 ¶54).  Hall's condition deteriorated gradually, over weeks, not "suddenly" on July 11, 2019.

Appellants also analogize Hall's condition to that of a subdued detainee placed in a "prone" position, like in *Fairchild v. Coryell County, Texas*, 40 F.4th 359, 363 (5th Cir. 2022).  Stickel, however, did not place Hall in a "prone" position.  Stickel had nothing to do with Hall's deteriorating condition or difficulty breathing.  This was a "issue continuous over time" that appeared throughout his stay.  Moreover, Stickel did not deny Hall medical care.   Hall had three breathing

treatments during Stickel's shift, Hall had his inhaler, and Stickel ensured the inhaler still had medications. Appellants' analogies do not fit the facts.

At best, Appellants' claim is Stickel delayed Hall's return to medical on two occasions. Stickel had two short interactions with Hall at 12:30 a.m. and 6:15 a.m. Both interactions followed soon after Hall was seen by medical at around 12:00 a.m. and 4:00 a.m. (ROA 30). Neither interaction resulted in a delay that caused Hall substantial harm.

Any delay following the 12:30 a.m. interaction did not cause substantial harm. Based on the SVN Flo-Sheet, Hall apparently requested and returned to medical around 4:00 a.m. to receive his second breathing treatment during Officer Stickel's shift. (ROA 30). Thereafter, Hall returned to his cell without issue and voiced no additional complaint until 6:15 a.m. (ROA 57). Moreover, according to "anyone reviewing [Hall's] records", following this treatment, Hall's condition improved and he "was doing well". (ROA 30, 42 ¶46).

Likewise, any alleged delay following the 6:15 a.m. interaction did not cause substantial harm. Again, Hall was beyond saving at this point, as a week of twenty-four-hour medical care commencing minutes later failed to save Hall. Hall's condition had been deteriorating for weeks, and based on Appellants' claim, Hall should have returned to the hospital *days* before July 11, 2019. (ROA 27-28). Ironically, it was likely the delay that got Hall to the hospital sooner. Based on

Stickel's description Hall's condition, Hall was in a similar state at both 12:30 a.m. and 6:15 a.m. When Hall went to medical at 4:00 a.m., however, the on-duty nurse did not call a medical emergency. When Stickel contacted medical around 7:00 a.m., however, the treating physician happened to be present. (ROA 51-52). It was Dr. Willingham who purportedly assessed Hall "correctly", which resulted in Hall being sent to the hospital. Based on Appellants' allegations, had Hall gone back to medical at 6:15 a.m. before the shift change and before the doctor arrived, Hall most likely would not have been properly assessed by the on-duty nurse, and he would have been sent back to his cell. Again, Appellants' allegations show the forty-minute delay in returning Hall to medical did not cause substantial harm.

Appellants incorrectly complain that the district court could not rely on the SVN Flo-Sheet cited in paragraph 23 of their complaint as evidence of when Hall received breathing treatments. According to Appellants, this reliance is inappropriate because they allege the Soluta nurses falsified information in the chart. While Appellants allege Soluta nurses falsified Hall's oxygen levels and breathing results, Appellants *do not* allege that the Soluta nurses arbitrarily filled in dates and times when Hall appeared for treatment. (ROA 51-52, 59-60). If anything, Appellants' allegations show the SVN Flo-Sheet *underreported* Hall's treatments. (ROA 59). Moreover, the Texas Rangers apparently relied on the SVN Flo-Sheet's dates and times to locate the video evidence to confirm that the Soluta nurses' did

not properly assess Hall during the breathing treatments recorded on the SVN Flo-Sheet.   (ROA 49-52).   Contrary to Appellants' argument, their allegations demonstrate the SVN Flo-Sheet *did* accurately record the dates and approximate times Hall went to medical for breathing treatments.

### 3.    Stickel did not ignore, intentionally mistreat, or evidence wanton disregard for Hall's condition.

The district court correctly found that Stickel was not deliberately indifferent to Hall's medical needs.   To establish a medical care claim against Stickel, Appellants had to show that Stickel "refused to treat [Hall], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."   *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotations and citations omitted).   "Deliberate indifference is an extremely high standard to meet."   *Id.* (internal quotations omitted).   This Court continues to apply this standard. *Cope v. Cogdill*, 3 F.4th 198, 207 (5th Cir. 2021), *cert. denied*, 213 L. Ed. 2d 1123, 142 S. Ct. 2573 (2022).

Appellants' allegations establish that Stickel *always* responded to Hall's request.  Based on Appellants' allegations, Stickel (1) called medical each time Hall requested to see medical; (2) continued to keep a close watch on Hall; (3) confirmed that Hall still had access to his medication; and (4) informed his relieving officer of Hall's condition, which resulted in Hall seeing medical for the third time at the end

of Stickel's shift.   The allegations establish that Stickel *did not* ignore Hall's complaints but responded to them.   Stickel *did not* refuse to treat Hall.   Hall went to medical and received breathing treatments three times during Stickel's shift. Appellants' allegations disprove that Stickel acted with deliberate indifference.

Appellants incorrectly latch onto statements in Stickel's officer reports that, with the benefit of hindsight, Appellants claims indicate Stickel knew he "could have" or "should have" done more.   In reporting the first encounter with Hall (around 12:30 am), Stickel states "upon recollection, I could have been more persistent to the Special Housing and Medical Staff" to determine whether they could evaluate Hall earlier.   (ROA 55-56).   In reporting the second encounter with Hall (around 6:15 am), Stickel states he was "unsure" if Hall's request constituted a medical emergency, but "[u]pon recollection of the situation . . . I should have guaranteed what the call should have been by contacting medical until they answered".   (ROA 57-58).   In essence, Appellants use Stickel's hindsight as a standard to establish a violation for claims asserted under § 1983. This is wrong.

Judging Stickel's actions with the benefit of hindsight is an improper standard. When evaluating alleged constitutional violations asserted under § 1983, "[c]ourts *must not* judge officers with the 20/20 vision of hindsight."   *City & County of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 615 (2015) (emphasis added).   This is what Appellants attempt to do here.   Using Stickel's post-incident thoughts on how

to potentially improve his response in the future is akin to using a "remedial measure" to prove culpable conduct, which is improper. *See, e.g.*, Fed. R. Evid. 407; *Higginbotham v. Baxter Intern., Inc.*, 495 F.3d 753, 760 (7th Cir. 2007) (affirming dismissal of complaint, holding that "[d]awing any inference from this would be incompatible with Fed. R. Evid. 407, which provides that subsequent remedial measures may not be used as evidence of liability."); *see also In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 388 n.13 (S.D.N.Y. 2013) ("I further note that drawing an adverse inference from DTTC's attempts to strengthen Longtop's financial controls would be inconsistent with the policy animating Federal Rule of Evidence 407, which prohibits using subsequent remedial measures as evidence of liability.").

Moreover, evidence of Stickel's purported struggle in being "unsure" in how best to proceed does not show that his earlier actions were constitutionally inadequate. Instead, it demonstrates an internal struggle on trying to determine the correct course of action. Stickel's mental struggle demonstrates the opposite of "wanton disregard", which would not care about the outcome of the action. Contrary to Appellants' position, these statements disprove rather than prove deliberate indifference.

Appellants' analogy to suicide cases like *Converse v. City of Kemah, Texas*, 961 F.3d 771 (5th Cir. 2020) is also misplaced. The *Converse* Court held an officer

could still be liable for a failure to provide medical care for removing some but not all known dangerous articles in a suicidal inmate's possession, something akin to intentionally treating the suicidal inmate incorrectly. *Id.* at 779. There are no facts that Stickel was intentionally treating Hall incorrectly. Instead, the facts show that Stickel did not ignore Hall (Stickel always responded) and did not refuse Hall treatment (Hall received treatment at 4:00 am and 7:00am), but simply struggled reconciling medical's advice (wait) with his desire to help.

### 4. Stickel's reliance on medical advice disproves deliberate indifference.

Stickel's reliance on medical advice defeats Appellants' claims of deliberate indifference. Appellants' allegations affirmatively establish that Stickel was relying upon the on-duty nurse's advice when determining how to respond to Hall's requests. (ROA 56) ("the allotted time per the nurse on-duty had yet to pass"). When Hall first approached Stickel about returning to medical at 12:30 a.m., about thirty minutes after Hall's last treatment, Stickel immediately sought to confirm whether Hall could return. (ROA 30). Stickel verified with "the on-duty nurse" *vis-à-vis* Officer Jimenez that Hall could not, as "Inmate Hall would not be able to return for a breathing treatment until approximately 4 hours after his last treatment". (ROA 55). Stickel knew Hall was receiving medical care and being monitored by medical. As a non-medical officer, his choice to rely on the "advice given to me through the on-duty nurses" was reasonable. (ROA 55-56).

Courts in this Circuit reject claims against non-medical officers relying upon the advice of the medical staff. *Pinchback v. Leon-Gomez*, 6:15-CV-805-RWS-KNM, 2017 WL 5632444, at *11 (E.D. Tex. Mar. 7, 2017), *report and recommendation adopted*, 615CV00805RWSKNM, 2017 WL 5634636 (E.D. Tex. Mar. 22, 2017) (holding officers were not deliberately indifferent when they "did not ignore [the inmate's] medical needs and instead took affirmative steps to contact medical" and "relied on the medical advice from [the nurse] instead of sending [the inmate] to the infirmary."). Stickel, as a "non-medical prison official[,] . . . cannot be held deliberately indifferent simply because [he allegedly] failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor". *Beard v. Bureau of Prisons*, 4:11-CV-383-Y, 2013 WL 5951160, at *8 n.50 (N.D. Tex. Nov. 7, 2013) (internal quotations omitted, alterations in original). "If a prisoner is under the care of medical experts, a non-medical prison official [like Stickel] will generally be justified in believing that the prisoner is in capable hands." *Id.* (internal quotations and citations omitted). As one court in this circuit noted:

> If the official [like Stickel] is not a trained health care worker, he cannot be found to be deliberately indifferent to an inmate's health unless the official had been advised by a health worker of the danger or unless the danger was so obvious that even a layman could recognize the risk. The officer defendants could not be expected to recognize ailments undetected by health professionals.

*Willcoxson v. Thaler*, CIV.A. H-10-2839, 2012 WL 5943384, at *10 (S.D. Tex. Nov. 27, 2012) (internal citations omitted, citing cases).

While Plaintiffs attempt to downplay Stickel's reliance on the nurse's advice as a "red herring", it is not. Appellants *do not* claim that medical advised Stickel to watch for certain dangerous symptoms that Stickel ignored. Appellants do not claim the nurse advised Stickel to provide certain treatment or accommodation to Hall that Stickel did not. The nurse advised Stickel at 12:30 a.m. that Hall could not return for an additional breathing treatment at that time. Stickel's reliance on the on-duty nurse's advice and his knowledge that medical was continuing to monitor Hall's condition is not a red herring, but facts that required a dismissal.

Appellants argue that the on-duty nurses' advice is irrelevant because the danger posed by the symptoms Stickel noted in his reports would have been obvious to a lay person. Appellants' facts disprove this. Their entire premise is no one, including Stickel, would recognize the emergency in this context. According to Appellants, the Soluta nurses' actions in failing to assess and record Hall's condition prevented "anyone" from understanding Hall's "true" condition. (ROA 42 ¶46). Not even a medically trained person could simply look at or listen to Hall "at a distance" to accurately determine Hall's condition. (ROA 50-52). Moreover, Appellants claim Hall's breathing problems were continuous and that he had "trouble breathing" throughout his stay. (ROA 30, 42 ¶46). Not even Dr.

Willingham, the Soluta doctor supervising Hall, immediately recognized that Hall was in a medical emergency when Hall arrived at medical at 7:00 a.m. on July 11, 2019.  (ROA 30, 52-53).  Instead, Dr. Willingham had to assess Hall, administer a breathing treatment, and reassess Hall *before* recognizing the emergency.  (ROA 30, 52-53).  *No one* recognized or called a medical emergency until *after* the treating doctor assessed Hall following the final breathing treatment.  (ROA 30 (noting treatment on 7/11 at 7:20 a.m., condition not improved, and transfer to MMH), and ROA 53 (noting EMS arrival and treatment beginning at 7:42 a.m.).  *In this context*, where not even the treating doctor immediately recognized the need for EMS simply by looking at Hall, a lay officer like Stickel certainly would not have recognized the medical emergency.

Appellants claim Stickel's reliance on the on-duty nurse's input was not reasonable because Stickel did not inform the on-duty nurse of Hall's condition. This is not a "reasonable" reading of their allegations.  The on-duty nurse had just seen Hall about an hour prior.  (ROA 30, 55).  Hall's chart reflected that Hall was *always* wheezing when he sought breathing treatments.  (ROA 30).  The Soluta nurses recognized that Hall's "issue [was] continuous over time – the inability to breath."  (ROA 42, ¶46).  Based in context, the on-duty nurse understood that Hall reportedly was having trouble breathing and requesting another breathing treatment.

Appellants half-heartedly claim that Stickel's statements about relying on medical advice contained in his report should not be believed. Appellants allege no facts to show that Stickel fabricated these statements in his reports. Moreover, Appellants rely extensively on other statements in Stickel's reports *for the truth* asserted, including statements regarding Stickel's description of Hall's condition and of Stickel's state of mind in being uneasy or unsure in how to respond. While the Court must accept the well-pleaded facts as true and take all *reasonable* inferences in the Appellants' favor, the Court does not, and cannot, cherry-pick facts to find a version of the allegations that most benefit Appellants. The Court should reject this argument. Stickel's reliance on medical was real and that reliance defeats a claim of deliberate indifference.

**5.    An alleged failure to seek additional medical care fails to state a claim for relief.**

Despite Stickel's responsiveness, Appellants claim that Stickel should have and could have done more. The thrust of Appellants' complaint against Stickel is he "should have" allowed Hall to return to medical sooner, notwithstanding the nurses' instructions. At most, these are allegations of negligence in not taking additional steps to address Hall's complaints. This Court has rejected similar "should have provided additional care" complaints. *See Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) ("The thrust of the complaint is that . . . the Paramedics should have provided additional care . . . . At most, these are allegations that the Paramedics

acted with negligence in not taking further steps to treat Graham after examining him"). While Appellants apparently argue that Stickel did not take the "most prudent course of action, that is not the test for a § 1983 claim." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 527 (5th Cir. 1999). "Should have" or "could have" done more does not state a claim, much less, overcome an assertion of qualified immunity.

The Fifth Circuit has "long held that the decision whether to provide additional treatment is a classic example of a matter for medical judgment, which fails to give rise to a deliberate-indifference." *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (rejecting claim that paramedics should have provided additional care). Courts refrain from even holding trained medical personnel liable for a failure to provide additional care where the issue turns on the adequacy of the previously provided medical treatment. *See, e.g.*, *In Domino v. TDCJ-ID*, 239 F.3d 752, 756 (5th Cir. 2001) (reversing denial of summary judgment by district court, holding psychiatrist not liable for failing to provide medical care where inmate expressed suicidal ideations to the psychiatrist, the psychiatrist returned the inmate to his cell after a five-minute examination, and the inmate committed suicide two and a half hours later). If an improper diagnosis by a medical professional does not establish a claim for relief against the medical professional, then neither should the alleged improper diagnosis of a non-medical officer like Stickel, who should be held to a less strict standard than that of the trained professional.

Stickel was aware that Hall had been seen, examined, and diagnosed by medical and had access to his medications. This Circuit has held that inmates receiving examinations by medical personnel on numerous occasions fail to set forth a valid showing of deliberate indifference. *See, e.g.*, *Shorty v. Liddell*, 356 Fed. Appx. 769, 770 (5th Cir. 2009) (affirming lower court's dismissal of inmate's medical care claim, holding no deliberate indifference, where inmate treated more than "fifty times for his health complaints."); *Ramirez v. Stacks*, 260 Fed. Appx. 658, 659 (5th Cir. 2007). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

While one can always argue more could have been done, this does not show deliberate indifference. And although Hall ultimately succumbed to his condition after a week of twenty-four-hour medical treatment, this Court has held that "[c]omplaints about unsuccessful medical treatment do not give rise to a civil rights action." *King v. Kilgore*, 98 F.3d 1338 (5th Cir. 1996) (per curiam) (unpublished) (rejecting a claim for failure to provide medical care where inmate "acknowledged that he received care" but "the care provided did not stop the [asthma] attack"). The district court properly dismissed Appellants' claims against Stickel.

**6.    Qualified immunity bars Appellants' claims.**

Finally, the district court's dismissal was proper because qualified immunity bars Appellants' claims. The burden is on Appellants to plead facts capable of rebutting the application of qualified immunity. *Spears v. McCraw*, 20-50406, 2021 WL 3439148, at *1 (5th Cir. Aug. 5, 2021) (internal citations and quotations omitted). "The doctrine of qualified immunity shields government officials from civil liability as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rutland v. Pepper*, 404 F.3d 921, 923 (5th Cir. 2005) (internal quotations omitted).

"The first step in [the] qualified immunity analysis is determining whether a plaintiff has successfully alleged facts showing the violation of a statutory or constitutional right by state officials." *Rutland*, 404 F.3d at 923. "If there is no violation, then the inquiry ends." *Id.* If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). A court may rely on either prong of the defense in its analysis. *Id.*

Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury. *Id.* To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear

that a reasonable official would understand that what he is doing violates that right. *Id.* The unlawfulness of the defendant's actions must have been readily apparent from sufficiently similar situations, but it is not necessary that the defendant's exact act have been illegal. *Id.* An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight. *Id.* (citing *Graham v. Connor,* 490 U.S. 386, 396–97 (1989)). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Id.*

Appellants failed to "allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Hall received multiple treatments during Stickel's shift. From Stickel's perspective, and "anyone" reviewing Hall's chart, Hall was being monitored by medical and doing well following his treatments. Not even Hall's treating physician immediately noted the medical emergency until after the last breathing treatment. At most, Stickel delayed Hall receiving additional treatment, but he did so based on the on-duty nurse's advice. (ROA 55-56). In the interim, Stickel ensured that Hall was responsive, conscious, breathing, and always had access to his medication. Appellants cite no authority for the proposition that a non-medical officer in Stickel's circumstances is liable for a short delay in similar circumstances.

Case law supports a dismissal based on qualified immunity in such scenarios. The alleged short delay in receiving additional treatments that Hall had been receiving daily for weeks is of no legal significance. *See, e.g.*, *See Schrader v. Ruggles*, 20-11257, 2021 WL 2843848, at *3 (5th Cir. July 7, 2021) (noting the inmate's failure to explain "how the fact that [the defendant] did not evaluate [the inmate] on January 30th—just hours after [the inmate] was treated by a doctor and cleared for incarceration—caused him substantial harm."); *Baldwin v. Dorsey,* 964 F.3d 320, 327–28 (5th Cir. 2020), cert. denied, 141 S. Ct. 1379, 209 L. Ed. 2d 123 (2021) ("Three hours' delay in directly responding to a medical need, at least on the facts alleged here, is not the same as never taking responsive action at all."); *Westfall v. Luna*, 903 F.3d 534, 551 (5th Cir. 2018) (holding "a reasonable officer could have believed that a delay of no more than 45 minutes for medical treatment, considering the injuries sustained by [the plaintiff], was lawful under our clearly established law"); *Maldonado v. Keesee*, 12 F.3d 1098 (5th Cir. 1993) ("The alleged delays in medical care relating to the blood pressure cuff and the 30 minute wait to go to the hospital are not unreasonable delays which would amount to a constitutional violation."). Qualified immunity bars any claim against Stickel, and the district court's dismissal was proper.

## CONCLUSION

The Court should affirm the district court's judgment.

Respectfully submitted,

/s/ R. Layne Rouse
R. Layne Rouse
Miles Nelson
Shafer, Davis, O'Leary & Stoker, PC
700 North Grant Street
201 Bank of America Building
Odessa, Texas 79760-1552
Tel: (432) 332-0893 Main
Fax: (432) 333-5002
Email: lrouse@shaferfirm.com
Email: mnelson@shaferfirm.com

**Counsel for Defendants - Appellees**

## CERTIFICATE OF SERVICE

I certify that on December 30, 2022, the foregoing document was served, via the Court's CM/ECF Document Filing System, http://ecf.ca5.uscourts.gov/, upon the following registered CM/ECF users:

Bruce K. Thomas
bthomas@bthomaslaw.com
12900 Preston Road, Ste. 590
Dallas, Texas 75230

T. Dean Malone
dean@deanmalone.com
900 Jackson Street, Ste. 730
Dallas, Texas 75202
*Counsel for Plaintiffs/Appellants*

Counsel also certified that on December 30, 2022, the foregoing instrument was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/.

Counsel further certifies that 1) required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; 2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and 3) the document has been scanned with Bitdefender Endpoint Security version 7.7 2 228 and is free of viruses.

<u>      */s/ R. Layne Rouse*           </u>
R. Layne Rouse

## CERTIFICATE OF COMPLIANCE

With Type-Volume Limitation, Typeface Requirements
And Type Style Requirements

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,637 words, including footnotes.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for Windows, version 16 in Times New Roman font 14-point type face.

*/s/ R. Layne Rouse*
R. Layne Rouse


Dated: December 30, 2022